Patton v. Mills.

---

## W. S. PATTON v. N. R. MILLS.

CONSIDERATION to Sustain Verbal Promise; When Promise is Not Within the Statute of Frauds. One S. had preëmpted but not paid for a tract of land. H. held a judgment in the district court of the county in which the land was situated, against her. She was also indebted to the defendant. Defendant, in order to collect his debt, verbally promised plaintiff that such judgment of H. was not and should not become a lien upon the land, and that if plaintiff would buy the land, he (defendant) would pay such judgment if it was or became a lien, and see him harmless from it. Plaintiff agreed to purchase. S. thereafter paid the government, obtained patent, and deeded to plaintiff, he paying to her at that time the full purchase money. Thereafter, by proceedings in the said district court, the judgment was declared a lien upon the land, and, to protect himself, plaintiff was compelled to pay it. *Held*, First, that there was a consideration to sustain defendant's promise to pay said judgment; and, second, that such promise was not within the statute of frauds, and void as a mere verbal promise to pay the debt of another.

*Error from Pawnee District Court.*

ACTION, by *Mills* against *Patton*. Trial at June Term, 1877, of the district court, and findings and judgment for *Mills*. New trial refused, and *Patton* brings the case here for review. All necessary facts and proceedings, and questions presented, fully appear in the subjoined opinion.

*Nelson Adams*, and *J. G. Waters*, for plaintiff in error:

The verbal promise made by Patton to Mills was wholly without consideration, and therefore void. It appears that there was no arrangement ever made by which Patton was to receive a dollar of the purchase price paid by Mills; that Mills obtained a warranty deed from Mattie Sanford, and paid to her the whole of the money. Nor does it appear in the most indefinite manner that there was ever any understanding between Patton and Mattie Sanford, that Patton was to participate in the proceeds, or that he ever disclosed to her his talk with Mills; and finally, the facts show that Patton never had any interest in the land sold. The final contract between Mattie Sanford and Mills, by which the land was finally conveyed, Patton was in no manner privy to. Every promise, to be valid and binding, must be based upon a consideration of some kind. It was a gratuitous undertaking on his part, from which he obtained no benefits whatever, and it does not appear that he was to be so benefited. This suit is brought on an assumed contract between Patton and Mills, and upon its validity the case must stand or fall.

The promise of Patton to Mills is void under the statute of frauds. The promise of Patton was made for Mattie Sanford, to enable her to make a sale of land; the judgment was against her, and her property; it was no debt of his, or by which he was in any manner bound. He made a verbal promise to pay it if it should be adjudged a lien on the land. Section 6 of our statutes on frauds and perjuries provides, that "no action shall be brought whereby to charge a party upon any special promise, to answer for the debt, default or

miscarriage of another person, . . . or upon any con-
tract for the sale of lands, tenements or hereditaments, or
any interest in or concerning them, . . . unless the
agreement upon which such action shall be brought, or some
memorandum or note thereof, shall be in writing, and signed
by the party to be charged therewith, or some other person
thereunto, by him or her lawfully authorized." We claim
that this verbal promise was not only to answer for the debt
of another, but is undoubtedly included in the meaning of
"any contract for the sale of lands, tenements or heredita-
ments, or any interest in or concerning them."

*N. B. Freeland,* for defendant in error:

Plaintiff argues that "the verbal promise made by Patton
to Mills was wholly without consideration, and therefore
void." The third finding states that "defendant, *in order to
collect his debt,* verbally promised . . . that he would
pay said judgment, and see him (Mills) harmless." This not
only shows that Patton received his *consideration,* in the col-
lection of his debt from an insolvent debtor, but that at the
same time it was an *original promise,* not within the statute
of frauds. "A promise to pay the debt of another, founded
on a new and distinct consideration, is not within the statute
of frauds. (10 Johns. 412; 18 Johns. 12; 7 Wend. 314; 13
Wend. 114; 10 Wend. 461; 1 N. Y. 396; 2 Rob. 46; 35 Barb.
463; 1 Brightly's N. Y. Dig., p. 939, ¶¶ 368, 369, and au-
thorities cited under last paragraph.)

Again: "It may be stated as a general rule, that when the
main purpose and object of the promisor is not to answer for
another, but to serve some purpose of his own, his promise
is not within the statute [of frauds], although it may be in
form a promise to pay the debt of another, and although the
performance of it may, incidentally, have the effect of extin-
guishing the liability of another." (3 Par. on Cont. 24.) It
seems to us that this authority determines this case, and car-
ries the question beyond any kind of controversy.

Then again: "Where the promise to pay the debt of an-

other is founded upon a new consideration, and this consideration passes between the parties to this promise, and gives to the promisor a benefit which he did not enjoy before, and would not have possessed but for the promise, then it will be regarded as an original promise, and therefore will be enforced, although not in writing." (2 Par. on Cont. 10; 1 Par. on Cont. 444.)

Patton's promise was not within the statute of frauds. A contract of indemnity is not within the statute of frauds. (1 Brightly's N. Y. Dig., p. 940, ¶ 377; 17 Johns. 113; 4 Den. 559. See, also, 4 Hill, 178; 5 Barb. 501.)

The opinion of the court was delivered by

BREWER, J.: The facts in this case as shown by the findings are substantially, that one Mattie Sanford preëmpted a certain tract of land in Pawnee county; that one Hurd held a judgment against her, and that she was also indebted to defendant, now plaintiff in error, in the sum of $100; that prior to her obtaining title from the government, defendant, in order to collect his debt, verbally promised plaintiff that if he would buy the land he would see and be responsible to him, the plaintiff, that said judgment should not be a lien on said tract of land, and that if it was he would pay it, and see him harmless from it; that plaintiff thereupon agreed to buy said land, and thereafter Mattie Sanford obtained title and deeded to plaintiff; that no promise was made by defendant after she obtained the title; that said judgment was declared a lien by the district court of Pawnee county, and thereafter paid by plaintiff; that plaintiff paid the entire purchase price to said Mattie Sanford at the time he received the deed; that defendant had no title or interest in said land; and that said Sanford conveyed by warranty deed, and no demand had been made by plaintiff of her for the amount of the judgment or to make good her warranty. Did the district court err in rendering judgment against the defendant on his promise to pay said judgment and see plaintiff harmless from it?

The findings are meager, and not so full and specific as they ought to be to give us a clear insight into all the facts and circumstances of the case; but still, with the intendments all in favor of the ruling of the district court, we cannot hold that it erred in its judgment upon such findings. That a contract was made between the parties is clearly shown, and also that the circumstances had arisen upon which defendant had predicated his promise. *Prima facie,* the defendant was bound by such promise, for it is a cardinal rule of all contracts, that he who promises must perform. Having shown a promise and a failure to perform, the general rule is, that a liability is shown and a right of action exists. The law intends that every man shall keep his promise, and holds him liable for non-performance. And while this is not the universal rule, for the law holds no man bound by a promise prohibited by the statute, or against public policy, yet where one claims immunity by reason thereof, the fact of such immunity should be made to appear. The law does not presume that it exists, but if anything, the reverse.

Two principal grounds of immunity are alleged, first, that the promise was without consideration; and second, that it was void under the statute of frauds. With the first we have had little difficulty, but are doubtful as to the second.

*First:* Was the promise without consideration? A consideration is said to be something of value to the promisor, or injury to the promisee. The finding is, that the defendant made the promise in order to collect his debt. Now this may refer simply to the motive which actuated the promisor, *i. e.,* he made the promise in the hope that if Mattie Sanford sold the land, she would pay his debt; or it may be broader, and include both the hope and the result. By some arrangement, the details of which are not given, he was enabled to collect his debt in case of a sale, and he made the promise in order to accomplish this result. Without a sale the debt may have been worthless, the land exempt even after payment of price to the government and receipt of the patent, and Mattie San-

ford insolvent; while with a sale his arrangements may have been such that payment of his debt was certain, and was in fact secured. And all this may be implied and have been intended by the expression, "in order to collect his debt." But again, the plaintiff, the promisee, was injured to the extent of the judgment lien. He paid the full price of the land to Mattie Sanford. The judgment was then declared a lien, and to protect his purchase he was compelled to pay it. He was injured then to the full amount of this judgment. At least, this so appears, *prima facie;* for though, as counsel argue, he had Mattie Sanford's warranty, it is not shown that she was solvent, or her warranty of any value.

*Second:* Was the promise void as a promise to pay the debt of another, and not in writing? This is really the difficult question in the case. Counsel argue very forcibly that the debt due Hurd was not a debt of defendant, but of Mattie Sanford alone; that defendant's promise to pay that debt was a promise to pay the debt of another, and being simply in parol, was not binding under the statute of frauds. They say:

"The promise of Patton was made for Mattie Sanford, to enable her to make a sale of land. The judgment was against her and her property. It was no debt of his, or by which he was in in any manner bound. He made a verbal promise to pay it if it should be adjudged a lien on the land. Section 6 of our statutes on frauds and perjuries provides that 'No action shall be brought whereby to charge a party upon any special promise to answer for the debt, default or miscarriage of another person, . . . or upon any contract for the sale of lands, tenements or hereditaments, or any interest in or concerning them, . . . unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto, by him or her lawfully authorized.' We claim that this verbal promise was not only to answer for the debt of another, but is undoubtedly included in the meaning of 'any contract for the sale of lands, tenements or hereditaments, or any interest in or concerning them.'"

There seems to be little force in the latter portion of coun-

sel's claim.   The contract was in no proper sense one for the sale of lands or any interest in or concerning them.   The findings expressly show that defendant had no title to or interest in the lands, and he contracted to sell none.   And in reference to the prior portion of the claim, the contract was not simply to pay the debt from Sanford to Hurd, but to protect the land from any lien of such judgment; and it was a contract not primarily for the benefit of Hurd, but of defendant.   In 3 Parsons on Contracts, p. 24, (6th ed.,) we find this rule:

"It may, indeed, be stated as a general rule that, wherever the main purpose and object of the promisor is not to answer for another, but to subserve some purpose of his own, his promise is not within the statute, although it may be in form a promise to pay the debt of another, and although the performance of it may incidentally have the effect of extinguishing the liability of another."

And in *Nelson v. Boynton*, 3 Metcalf, 396, cited in the note to the above, C. J. Shaw says:

"The terms 'original' and 'collateral' promise, though not used in the statute, are convenient enough to distinguish between the cases where the direct and leading object of the promise is, to become the surety or guarantor of another's debt, and those where, although the effect of the promise is to pay the debt of another, yet the leading object of the undertaker is to subserve or promote some interest or purpose of his own.   The former, whether made before, or after, or at the same time with the promise of the principal, is not valid, unless manifested by evidence in writing; the latter, if made on good consideration, is unaffected by the statute, because, although the effect of it is to release or suspend the debt of another, yet that is not the leading object on the part of the promisor."

See, also, *Alger v. Scoville*, 1 Gray, 391; *McCreary v. Van Hook*, 35 Tex. 631.   Again, we find it laid down in many authorities, that a promise, to be within this clause of the statute, must be to the creditor, and not to the debtor or a stranger to the debt. (*Preble v. Baldwin*, 6 Cush. 549; *Pike v. Brown*, 7 Cush. 136; *Eastwood v. Kenyon*, 11 Adol. & Ell. 446; *Hargreaves v. Parsons*, 13 Meeson & Welsby, 561; *Wolff*

*v. Koppel,* 5 Hill, 458; *Barker v. Bradley,* 42 N. Y. 316; *Britton v. Angier,* 48 N. H. 420; *Wilson v. Bevans,* 58 Ill. 232; *Brown v. Brown,* 47 Mo. 130.) In this last case, it is said:

"The provision that no action shall be brought to charge any person upon the promise to answer for the debt of another, unless it is made in writing, is construed to apply to promises made to the creditor; and hence it is always held, that while the creditor cannot recover upon a collateral parol agreement made with him to pay his debtor's obligations, yet if such agreement be not made with the creditor, it can be enforced, if otherwise good, though not evidenced by any note or memorandum in writing."

The idea seems to be, that a promise to answer for the debt of another must be to the one who has a right to claim the debt; that it must be a promise in support of the debt, collateral to it, as the expression is. But a promise that is not primarily designed for relief of the debtor, or to help the creditor, but is for the benefit of the promisor, is valid though not in writing. It is like a promise to do work, or deliver goods, which is good, no matter who receives the benefit of the work, or to whom the goods are delivered. There being a good consideration, and the contract being designed for the benefit of the party promising, it is binding, though in parol, and though it is a promise to pay another party's debt. It is no more than a promise to pay money to a third party, which, of course, is not within the letter of the act; and the fact that the money thus paid operates to discharge a debt, does not bring the contract within the statute.

Taking the case at bar, if Hurd had held no claim against Mattie Sanford, and defendant had promised plaintiff to pay Hurd some money if he (plaintiff) would buy this land, could it be claimed that this promise was within the statute ?. Clearly not. No more can it, though the payment operated and was intended to discharge a debt of Sanford's to Hurd. The primary object was not to relieve her of her obligations, or to help Hurd to his claim, but to collect defendant's own debt. The payment of her debt was incidental merely to the accomplishment of the object of his promise, the collec-

tion of his own debt. We think, therefore, that this objection must also fail.

Other matters are suggested, but they seem to us of minor importance. One is, that the judgment was erroneously declared a lien. But it was so declared by a court of competent jurisdiction, and we must presume that such adjudication was correct. Enough facts are not before us to show that it was not correct, and anyway it could not be thus collaterally impeached. But it seems to us unnecessary to notice in detail these various objections. None of them go to the effect of showing that the contract was prohibited by statute, against public policy, or without consideration.

We cannot therefore hold that the court erred in its judgment, and it must be affirmed.

All the Justices concurring.