## J. A. BRANT *et al.* v. D. P. JOHNSON.

1. PROMISE—*Statute of Frauds.* A verbal promise to pay the debt of another is within the statute of frauds, unless it is, in effect, substituted for the original liability.

2. AGENCY—*Letter, Not a Contract.* A letter of instructions from one agent to another cannot be construed into a contract between the principal and a third party respecting the business referred to in the letter.

*Error from Franklin District Court.*

THE case is fully stated in the opinion.

*J. W. Deford,* for plaintiffs in error.

*Mechem & Smart,* for defendant in error.

Opinion by SIMPSON, C.: Brant & Beachy sued D. P. Johnson in the district court of Franklin county, alleging substantially that they were partners conducting a real-estate agency, at Ottawa, in said county; that on the 19th day of March, 1883, they made a contract with Edwin E. Wilson, by which Wilson employed them to sell seven tracts of land lying in said county for the sum of $22,252, and if they sold at that price they were to receive 3 per cent. commission, and were to make no charges or expenses; that if all the land should be sold within six months, they were entitled to the amount realized in excess of $21,000; that if the total amount realized by a sale within six months should be $500 or more in excess of $22,252, then their commission was to be 6 per cent. of the gross sales, and no more; that if not sold within six months, but within one year, then the commission should be 4½ per cent.; that if any of the property should remain unsold after one year, or if the land did not sell for $22,252, the commissions and charges of every kind should not be in excess of 3 per cent. Brant & Beachy were to take charge of and lease the land, but no lease to interfere with the sale. On the 10th day of May, 1883, an additional contract was made between the parties, wherein it was provided that the amount

of $814 is due Brant & Beachy when that sum shall have been derived from the sale of the real estate known as the "Hamilton lands," in Franklin county, subject to à payment out of the proceeds of said sale of $1,500 due Hamilton. On the 26th day of December, 1883, Brant & Beachy entered into a contract with one W. A. Clark, which recited that the previous contracts with Wilson were made for Clark, Underwood & Co., and for convenience in business Wilson had conveyed to Clark the lands mentioned in the original contract, who holds the same for Clark, Underwood & Co.; that said conveyance shall not be considered a breach of the original contract, and that Brant & Beachy shall continue to handle the lands upon the terms agreed upon, the firm of Underwood, Clark & Co., however, to have the full benefit of and be subject to any agreements in existence between Wilson and Brant & Beachy in relation to said lands, the same having been made by Wilson for Underwood, Clark & Co. It is then alleged that Clark mortgaged these lands to D. P. Johnson to secure the payment of $20,000 due from Underwood, Clark & Co. In said mortgage it was agreed that at any time that a sale was made of any part of the land at fair prices, the said Johnson, on receiving the purchase-price of the land sold, should credit it on the notes, and release the tract sold from the operation of the mortgage. On the 15th day of May, 1884, it was further agreed between Clark and Brant & Beachy, that in consideration of the sale of the balance of the Hamilton lands to Fickenger at the price of $8,500, the said Brant & Beachy were to receive as total commissions the sum of $365, there being the sum of $814 to be paid Brant & Beachy out of the sale to Fickenger, Brant & Beachy representing that the proceeds of rent in their hands amount to $300; that on the 25th day of September, 1884, the said D. P. Johnson, through his agent, the Goodin Bank, of Ottawa, duly authorized, promised and specially agreed with Brant & Beachy, that if they would complete the sale to Fickenger, or his assignee, Kerr, and to David Fogle, that as soon as the proceeds of said sale were

paid them, the sum due them would be paid by his agent, the bank, or by himself; that they did complete said sales, the one to Fogle for $4,800, and the other to Kerr for $8,500, which sums were paid to the Goodin Bank; that Johnson refused to pay, and they ask judgment against him for $978.64, with interest from May 1, 1885.

Johnson answered, denying generally, and for a second defense pleaded the statutes of limitation, and for a third defense alleged that heretofore, in a certain action in the district court of Franklin county, wherein these plaintiffs brought an action against W. A. Clark, defendant, the identical fund of $1,100 mentioned in the petition (being the balance of the proceeds of the sales to Fogel and Kerr remaining on deposit in the Goodin Bank) was attached as the property of Clark; that thereupon this defendant filed an interplea in said action, claiming said funds as his, and the plaintiffs filed a reply to said interplea, denying the claim set up therein, and setting forth the same facts which are now set up in this petition as the foundation of their action, and praying judgment therein against the defendant. Said action came on for trial, and was tried upon the issue presented by the interplea, reply and denial, and judgment was rendered thereon in favor of this defendant. The defendant alleges that all the matters and things now complained of and sought to be litigated were finally adjudicated in that action in favor of this defendant. The entire pleadings, records and proceedings in that action are made a part of the answer. This case was tried by the court at the October term, 1888, and findings of fact and conclusions of law were entered as follows:

"FINDINGS OF FACT.

"1. The plaintiffs are, and at the times herein referred to were, co-partners in the business of real-estate agents and loan brokers at Ottawa, Kansas.

"2. On the 19th of March, 1883, the plaintiffs, by written agreement, undertook as such brokers to sell for E. E. Wilson certain land in this county. This agreement was modified by a further writing on May 10, 1883, whereby it was agreed that $814 of the proceeds of said sale, when made,

should be paid over to the plaintiffs. This was a balance of purchase-money due on said land to one Hamilton, and by agreement between him and the plaintiffs, was to be received by the latter in satisfaction of a debt Hamilton owed them.

"3. Wilson conveyed said lands December 26, 1883, to W. A. Clark as a member of and for the firm of Underwood, Clark & Co., whose agent Wilson was, and for whom he had held the legal title to said lands; and therefore said Clark adopted and ratified the said prior agreements between Wilson and plaintiffs.

"4. On December 28, 1883, Clark mortgaged said lands to D. P. Johnson, the defendant, to secure $20,000 on indebtedness due him from Underwood, Clark & Co. This mortgage contained a condition that Clark might sell the lands or parcels thereof at fair prices, and that upon receipt of the purchase-price Johnson would release the tracts so sold; when he took this mortgage the defendant had no knowledge of the plaintiff's claim upon proceeds.

"5. On May 15, 1884, the plaintiffs agreed, in writing set out in the petition, with said W. A. Clark that in consideration of certain sales of the remainder of said land by the plaintiffs they should have a total commission for such sales of $365, and that they should have also out of the proceeds of such sale said $814, and should account for $300 rent received.

"6. Written agreements for the sales of said remainder of the Hamilton lands had been made by the plaintiffs as such agents with two certain parties, and were outstanding and in full force on May 15, 1884, and remained without being carried into effect for considerable time because of defects in the title which said plaintiffs were endeavoring to and did afterward correct, at the request of Clark and his grantor, Wilson, whereby they became entitled to $99.64 for their services and expenses therein from said Clark.

"7. On September 22, 1884, the defendant, upon request of Clark, forwarded to Goodin Bank, at Ottawa, releases for the lands so sold by the plaintiffs, with instructions to deliver on payment of purchase-money in full to the bank for him (Johnson). Plaintiffs learning of this informed the bank of their claims heretofore referred to, and demanded payment thereof out of said proceeds. The bank at once informed the defendant by letter of said claims and demands. Thereupon defendant's agents, thereto duly authorized, instructed the

bank in writing, duly signed by them, as follows, in relation thereto:

"'Underwood, Clark & Co. told us that they would settle Beachy's claim. Presume they will do so if they have to. We think it will be arranged, but perhaps they hope to reduce the demand some. We would prefer to have the whole amount, but if Beachy's claim must be settled, let it be done. U., C. & Co. will make the amount good to us.
(Signed)    RICHMOND & TITUS.'

"8. On receiving this letter and instructions, the bank showed Mr. Beachy the letter, and orally promised the plaintiff payment out of the proceeds when they came in. Considerable delay, however, occurred, occasioned by an apparent defect in the title, to cure which the plaintiffs were endeavoring to obtain a certain quitclaim deed, which they finally procured and placed on record November 5, 1884. Pending this delay, the defendant ordered and caused the return of his releases and all other papers from said bank.

"9. After said deed was procured, still further delays occurred, occasioned by the effort of the purchasers to negotiate loans upon the lands to pay the purchase-money. In March, 1885, the defendant, who lived in Iowa, came in person to investigate the matter and look after the lands. After seeing the lands, he called upon the plaintiffs and inquired for and obtained the particulars of their claim, and of the terms and conditions of the pending contracts of sale, and promised to plaintiffs to pay said claim, saying to them with reference thereto, 'I will make it my debt and see it paid;' and told the plaintiff Beachy to go on and close up the trade, and he should have his pay out of the proceeds. This promise was entirely verbal.

"10. The plaintiffs negotiated the sales of the lands referred to, and, after the contracts were signed, were active in making the title satisfactory to the purchasers and in bringing about a compliance on the part of both parties. They were engaged in this when the defendant made the promise just referred to, and continued the same service afterward, and finally, in May, 1885, the parties were ready to and did perform on both sides. In anticipation thereof the defendant had, after said promise, again forwarded said releases to Goodin Bank, with instructions to deliver them only upon full payment of all the proceeds of sale for him being first made. The deeds from Clark were accordingly delivered (by another agent), and the full proceeds of the sales paid to Goodin Bank for Johnson. The plaintiffs protested against

this, and demanded payment of their claims from Clark's agent and from the bank, but were refused.

"11. While the plaintiffs were at all times active and energetic in making the sales and procuring a compliance with the contracts, and expended much time and work therein, it does not appear that they did anything more or differently because of the defendant's promise than they otherwise would have done, and they in fact did nothing further than they would have done without such promise, but they relied upon receiving their pay out of such proceeds, and when refused, they brought suit against Clark and garnished the bank, as shown in the action of Brant v. Clark, referred to in the preliminary statement.

"12. The plaintiffs' claims so due from Clark, and which defendant promised to pay, are:

| | |
|---|---:|
| Balance of purchase-money, as stated | $814 00 |
| Commissions | 365 00 |
| Services and expenses in perfecting title | 99 64 |
| Total | $1,278 64 |
| Less moneys for rents | 300 00 |
| Interest | ...... |
| Total amount due plaintiffs | ...... |

"For the above amount judgment was duly rendered in this action against Clark November 1, 1888, which judgment is still in full force and unpaid. Underwood, Clark & Co. are insolvent, and after applying all said purchase-money they are still heavily indebted to the said D. P. Johnson upon said mortgage debt, and otherwise.

"13. It is admitted that all the written agreements attached to and copied into the petition were duly executed and delivered by the parties thereto alleged."

"CONCLUSIONS OF LAW.

"1. That the plaintiffs had no lien upon the proceeds of the lands sold by them for Clark for the indebtedness due them from the latter.

"2. The defendant's promise to pay Clark's debt was a special promise to answer for the debt of another, and not being in writing, is within section 6 of the statute of frauds, and cannot be enforced.

"3. The authority given by Richmond & Titus to the Goodin Bank, in the letter of September 22, 1884, is merely an instruction by one of the defendant's agents to another, and cannot be construed into a contract between the defendant and plaintiffs, or as giving to the latter a lien upon funds

still in the hands of the purchasers of the lands. Further, it appears that this instruction was revoked, and other instructions given.

"4. No legal liability of the defendant to the plaintiffs, as alleged in the petition, is shown by the facts appearing on the trial, and judgment will therefore be rendered for the defendant for costs."

The case is properly here for review, and counsel for plaintiffs in error insists that the promises of Johnson, as shown in the seventh, eighth and ninth findings, were original and not collateral.

I. A case in which both Brant & Beachy and Johnson were parties, heretofore decided by this court, (*Johnson v. Brant*, 38 Kas. 754,) to some extent discusses the questions involved in this controversy. The counsel for the plaintiffs in error now insists that the promises of Johnson, as shown in the seventh, eighth and ninth findings, were original and not collateral. In the case reported in 38 Kas., Mr. Justice VALENTINE says:

"As before stated, we think the plaintiffs did not have any lien upon these funds, and besides, Johnson's waiver appears to have been wholly by parol, and without any consideration whatever. And it was also an agreement to answer for the debt or default of another person."

This was said in an action between these same parties, in which the validity of Johnson's promise to pay was directly in issue by the pleadings. It is plain that Brant & Beachy did not at the time consider Johnson's promise to pay the debt of Clark an original one, because they did not rely on it, and did not discharge Clark from the debt, but sued him and insisted on payment from Clark, attempted to garnish funds in the bank which they supposed belonged to Clark, and never attempted to enforce the promise against Johnson until all hope of securing their money from Clark had departed. This conclusively establishes the promise of Johnson as a collateral one. The ingenious theory of counsel for the plaintiffs in error, that seeks to apply the rule that "where one seeks to promote or subserve some interest or purpose of his own by

a promise to pay the debt of another, which if made on a good consideration is unaffected by the statute of frauds," is not applicable here, because the greater part of the services of Brant & Beachy had already been performed, with a full knowledge on their part that the proceeds of all sales were to be paid to Johnson, and with a special written agreement in their behalf that their agency should not be affected by the execution of the mortgage by Clark to Johnson. With this knowledge, when finally they commenced legal proceedings to enforce collection of their commission, Clark was the party against whom they moved, and not Johnson. It would seem from their own acts that this action against Johnson was a *dernier ressort.* There was no antecedent obligation on the part of Johnson to pay these plaintiffs in error. It is not shown that he was specially benefited, because by the litigation that has resulted it has been adjudicated that he was entitled to the balance in the bank, independent of any agreement with or promise to Brant & Beachy. Brant & Beachy are not brought within any of the judicial exceptions to the statute of frauds.

There was no original obligation, and in the nature of things the promise of Johnson was a collateral one. In any event, the parol promise must be made upon good consideration, and it is now urged that a good consideration was the fact that Johnson would be saved the trouble and expense of a foreclosure; but he had already provided for that by his contract with Clark, and the mortgage executed by Clark provided in express terms that Clark might sell portions or all the land at fair prices, and that Johnson, upon receiving the purchase-price of said sales, should credit them upon the notes secured by the mortgage. This contract was made by the principal, and Johnson could not be specially benefited by its repetition by the agents. The weight of modern authority now is, that the promise, although made upon a new consideration, of benefit to the promisor, is held to be collateral if the original liability remains, and that the promise is within the statute unless it is in effect substituted for the original lia-

bility. This rule is sustained from citations from the supreme court reports of Indiana, Iowa, Massachusetts, Michigan, Wisconsin, Mississippi, Georgia, Maine, New York, Nebraska, Ohio, and Pennsylvania, in notes 1 and 2, on page 682, 8 Am. & Eng. Encyc. of Law.

II. But it is said that the promise of Johnson is in writing, as evidenced by the letter of his agents, Richmond & Titus, to the Goodin Bank, as set forth in the seventh finding of fact. The third conclusion of law of the trial court adopts the language of this court with reference to that contention, and is a conclusive refutation of that claim. It says the authority given by Richmond & Titus to the Goodin Bank in the letter of September 22, 1884, is merely an instruction by one of Johnson's agents to another, and cannot be construed into a contract between Johnson and the plaintiffs in error; and further, it appears that this instruction was revoked and others given.

No legal liability of Johnson to the plaintiffs in error is shown by the facts contained in the record. It is recommended that the judgment of the district court be affirmed.

By the Court: It is so ordered.

All the Justices concurring.