### STEPHEN v. YEOMANS.

CONTRACTS—ORIGINAL PROMISE—CONSIDERATION.

Where one furnishing material for a building in process of construction contracts in writing, for a valuable consideration, to see that no liens are placed upon the property, his subsequent agreement to pay the claim of a material man, in consideration of the latter's forbearing to enforce his lien, is binding as an original promise.

Error to Wayne; Frazer, J. Submitted April 15, 1897. Decided May 11, 1897.

*Assumpsit* by William R. Stephen and Henry Mason against Arthur Yeomans and Frederick H. Yeomans for goods sold and delivered. From a judgment for plaintiffs, defendants bring error. Affirmed.

*W. W. Wicker*, for appellants.

*S. E. Engle*, for appellees.

MONTGOMERY, J.    Reissman & Barnes had a contract
for the purchase of some lots on Tillman avenue, in
Detroit.    They were also engaged in building two houses
upon these lots.    The defendants furnished lumber to
them to be used in the construction of the houses.    Plain-
tiffs furnished hardware to be used for the same purpose,
to the amount of $176.52.    Reissman & Barnes sought to
make a loan on the premises through one Charles T.
Miller, and the following letter was addressed to Mr.
Reissman by Mr. Miller:

"MR. GEO. H. REISSMAN, City.

"*Dear Sir:*   With reference to closing up the loans
on Tillman-avenue houses, my clients wish to have it
done in the following manner:   Upon delivery of the
Chemenski mortgages for $1,950, properly executed, we
will pay out $1,185 to the several parties you men-
tion, so as to procure release of existing mortgages and
pay some more pressing accounts.   The remaining $767
coming to you, we wish to go to Yeomans & Co., on con-
dition that they or you will see that all the other bills are
paid, and no liens placed on the property.

"Yours truly,
"CHAS. T. MILLER."

Upon this agreement, defendants indorsed the follow-
ing:

"We accept the above condition.
"YEOMANS, CHESEBROUGH & CO."

This was also signed by Reissman & Barnes.

Thereupon Mr. Miller paid into the hands of Yeomans,
Chesebrough & Co., the defendants, the $767 mentioned
in the foregoing letter.   Subsequently, plaintiff Mason, in
company with Mr. Reissman, called upon Yeomans &
Co., and what occurred is in dispute.   But it is conceded
that Yeomans & Co. paid $90 upon the account, leaving

a balance of $86.52. The plaintiffs' claim is that at this time Yeomans & Co. agreed to pay the amount of this claim of plaintiffs, and that the plaintiffs accepted Yeomans & Co. for their pay, and released Reissman & Barnes. After two payments amounting to $90 had been made, plaintiffs' agent again called upon the defendants for the balance. Defendants then stated that they would not pay any more, whereupon plaintiffs' agent said that the time for putting a lien upon the property had nearly expired, and plaintiffs wanted to know what defendants were going to do, so that plaintiffs could get secured. Plaintiffs' agent testifies that defendants then told him that they were on a bond to see that the liens were paid, and requested him not to put a lien upon the property. Defendants admit that Mr. Mason called upon them in company with Mr. Reissman, and that they paid $25 upon the account. One of the defendants testified that he stated to them at that time that he would pay the bills that they brought in to him, if they had any, from the money that he was to get from Mr. Miller; that he subsequently paid out more than $767; and that he afterwards told Mr. Mason that, if he wished to put a lien upon the property, he could not keep him from it, and that he was not going to pay the bills with his own money.

The only matter in dispute was whether the defendants promised the plaintiffs to pay them their demand. The case was submitted to the jury on the following charge:

"If you believe that Yeomans & Chesebrough promised that, if the plaintiffs, Stephen & Mason, should not resort to or enforce their lien against the property in question, they would pay the bill, that would be a good and valid consideration, and the promise would be original to pay the debt, and the defendants would be liable."

Defendants' counsel complains of this instruction, and contends that, before a promise to pay a sum which consists of an obligation owing by another can be treated as an original promise, a consideration must pass to the promisor; and counsel cites authorities to show that it is

not enough, in such case, that the plaintiffs have relinquished an advantage or given up a lien in consequence of defendants' promise. This contention may be conceded, but counsel seems to have overlooked the fact that by the undisputed testimony it appears that there was in this case a consideration passing to the promisors. The promisors had bound themselves to keep these premises clear of liens, and, to that end, to pay all other bills than their own. Certainly, it was a consideration passing to them to refrain from placing a lien upon this property, when, if such lien had been placed upon the property, they would have been liable for a breach of their undertaking. They had an interest in the property to that extent, and the case cannot be distinguished from one in which they were either owners or holders of a lien upon the property. They were under a legal obligation to prevent the lien being placed there, and would, of necessity, have been damaged by having one placed upon the property. We think a consideration passed directly to them, upon the undisputed testimony; and, this being the case, the charge of the court, which was evidently given with a view to the circumstances of this particular case, was not error.

Judgment affirmed.

The other Justices concurred.