No. 20,520.

CHARLES M. JOHNSON, *Appellee,* v. JAMES HUFFAKER et al. (ELIZABETH CUNNINGHAM, *Appellant*).

### SYLLABUS BY THE COURT.

ORAL PROMISE—*To Pay Debt of Another—Forbearance of Creditor—Good Consideration for Promise—Statute of Frauds.* A promise to pay an existing note and mortgage executed by another, made to subserve the purpose and protect the interest of the promisor who had become the owner of the mortgaged land, the consideration for the promise being the forbearance of the creditor to whom the promise was made in bringing a foreclosure proceeding, constitutes an original undertaking of the promisor and is valid though not in writing.

Appeal from Barber district court; PRESTON B. GILLETT, judge. Opinion filed January 6, 1917. Affirmed.

*Samuel Griffin,* of Medicine Lodge, *Edmund H. McVey,* and *Samuel R. Freet,* both of Kansas City, Mo., for the appellant.

*Seward I. Field,* of Medicine Lodge, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: Action to foreclose a mortgage. A decree of foreclosure was entered, an attachment sustained, a receiver for the property appointed, and a personal judgment rendered against defendant Elizabeth Cunningham, who appeals.

The plaintiff, Johnson, is the assignee of S. I. Field, in whose favor the note and mortgage were executed by defendant Huffaker, the original owner of the land. Huffaker sold the land to E. R. Bailey, who conveyed it to Elizabeth Cunningham, a resident of Kansas City, Mo., and the latter

subsequently executed an instrument purporting to convey
to defendant Grace Cunningham, in whose name the legal
title stood when the action was begun.   The deed received by
Elizabeth Cunningham, after mentioning a prior mortgage to
the Warren Mortgage Company for $2400 to which the land
was subject, contained also the following recital:

"Subject also to mortgage of $3354 given to Seward I. Field, dated
Aug. 20th, 1912, and interest due thereon from date of mortgage," etc.

The personal liability of Elizabeth Cunningham is grounded
upon an agreement, alleged to have been made by her, both
orally and in correspondence, covering a period from Decem-
ber, 1914, to July, 1915, between herself and Field, who was
acting as the plaintiff's attorney.   It seems that before Bailey
sold the land to Elizabeth Cunningham, Field had been
negotiating with the former in reference to an extension of
the mortgage, and an agreement had been drawn up which
was never completed.   This document, which was introduced
in evidence, provided that upon payment of $373.40 upon the
indebtedness, which by that time amounted to $4173.40, the
balance of $3800 would be extended until December 1, 1915.
After learning that the land had been transferred to Eliza-
beth Cunningham, Field began the correspondence mentioned.
In his first letter to her, written December 14, 1914, he said
in part:

"I understand that you are now the holder of this land, and as you
know, I represent the holder of the second mortgage, which now
amounts to something over $4000 with interest.   I had agreed with Mr.
Bailey that if this second mortgage is reduced to $3800 on or before
January 1st, we would extend it for one year from December 1st, and
what we wanted to know was this:  Shall I correspond with you or with
Mr. Bailey in reference to this mortgage?  If I am to correspond with
you, I will furnish you a statement of the amount due up to January
1st, and upon receipt of this amount, I will furnish you written renewal
agreement, as above outlined, or, I will send the renewal agreement to
Kansas City to a friend of mine, and you can call at his office and pay
the amount and take it up."

After writing several more letters Field received one dated
December 30 from Elizabeth Cunningham, in which she made
this statement:

"Yours of recent date at hand also telegram.   The interest on the
1st mortgage also on the second will be taken care of within the next
few days.  I did not know about the $60 interest on the 1st and am quite

sure that Mr. Bailey thought it was all taken care of. However, he will be in the city to-morrow and I will take the matter up with him and see that it is paid at once."

### In her next letter a week later she said:

"I have sent the interest on the 1st mortgage to Mr. Suddock of Emporia, Kansas, for the Warren Mortgage Co., and will have the $373.40 sent you this week."

In answer to his many communications urging her to attend to the matter and avoid the necessity of foreclosure, she made the following statements in her various letters.

### On January 19, 1915:

"Your telegram at hand. Will say in reply that I will send the $373.40 at an early date. It was impossible for me to send it before as I have been very sick for ten days and not able to take care of my collections. Please hold this until Monday and I will be sure to meet it at that time."

### In another letter, March 8, she said:

"I am sorry I was not able to send the payment per my promise last week. Will be sure to send the above this week."

### Again, on March 28, she said:

"I have a man who I am quite certain of dealing with for the farm near Sharon and he will be out there this week. I will wire you so that you will be able to see him. He has plenty of money and will want to pay the full amount of your mortgage. I have been unable to pay the $374.00 for the extension as yet and am sure this deal will suit us much better."

### Again, on April 28:

"I hope you will not get impatient as I am sure I will be able to get your money sooner than you can by a foreclosure."

### Later she said:

"Yours of recent date and I will say in reply that I will be sure to take care of that mortgage in some manner next week. I have just closed a deal here for a three story apartment building which brings $200.00 per month and a vacant corner which I have an offer on for cash. If I make this sale I do not want to sell the farm, and I will make a payment on the second & put what I still owe on the farm in a 1st & of course will then take up the full amount of your mortgage."

### On June 4:

"I will wire you one day next week when to expect me and I will either take up the full amount of 2d mortgage or make some satisfactory arrangements. I am sending the Warren Mtg. Co. $25.00 interest by this same mail."

On July 12:

"I have some good land in North Dakota and would you consider a quarter of this land for your second mortgage. If you will consider same I will send you or bring you the full description of same and you can investigate it and I feel sure we can make a deal satisfactory to each of us."

Finally, on July 21, she wrote:

"I appreciate your patience in this matter and I know I have made too many promises, but I have been doing my very best to take care of this and would have been able to have done so had the times been normal. I will do my best to make something go through soon."

In a conversation with Field, who was threatening to bring foreclosure proceedings, had shortly after the correspondence began, Mrs. Cunningham told him that she had a large amount of money invested in the land in excess of the mortgage liens and that she was going to take care of it. She told him she was going to have money in about two weeks and asked him to wait that long on her, and she would pay the second mortgage. He agreed to wait on her and did wait that length of time and much longer. Persons who were present during a conversation between Field and Mrs. Cunningham testified that she promised to pay the Johnson debt if she was given two weeks time. One stated that she promised to pay the debt in two weeks from that time, and another testified that she asked Field for two weeks more time, and that Field agreed to give her the extension. The trial court held that Mrs. Cunningham was personally liable for the debt and the personal judgment against her gives rise to the principal controversy on this appeal.

The authority of Field to act for the plaintiff, Johnson, in the negotiations with Mrs. Cunningham and to make the extension agreement is challenged. His authority is hardly open to question by her. It is not questioned by Johnson, for whom he was acting, although the negotiations lasted a long time. Johnson accepted the benefits of the negotiations and agreements and appears in court claiming the benefits acquired through the action taken by his attorney. If there was any excess of authority by Field it was ratified by Johnson. Any act of his which Johnson might have authorized can be ratified. Ratification may be implied from circumstances and all the

circumstances of the case showed acquiescence and ratification; and besides, Mrs. Cunningham herself dealt with Field throughout the transactions as with one having authority.

It is contended that an assumption of liability by Mrs. Cunningham was not shown, that the essentials of a contract were lacking in the correspondence, and that an oral agreement to pay a debt not her own is void under the statute of frauds. There was no assumption of the debt in the deed to Mrs. Cunningham, and if her agreement to pay is collateral and is a promise to become the guarantor of the debt of another, it must be evidenced by a writing in order to be valid. In the correspondence between the parties there is a very close approach to a valid and binding agreement. It indicates clearly a purpose on her part not only to pay the $373.40 first spoken of, but also to take care of and pay the whole indebtedness secured by the second mortgage. There is a lack of definiteness, however, as to the time to which payment was to be postponed. When did the minds of the parties meet and the agreement become complete, so that for a specific time no action on the debt could have been maintained by the creditor? While an extension followed the negotiations between the parties, it is difficult to find in the correspondence the necessary certainty as to the terms of the agreement and particularly as to the period for which an extension was granted.

However, the agreement is not to be regarded as a collateral one or a promise to pay the debt of another within the statute of frauds. The action taken and the promises made by Mrs. Cunningham were not taken and made to aid the debtor, the maker of the note and mortgage held by Johnson. Her purpose was to protect her investment in the land and not to become a surety or guarantor for the maker of the note and mortgage or for any one else. The promise having been made for her own benefit; that is, to protect her land from foreclosure, based on the new consideration of forbearance in the bringing of foreclosure proceedings, it is original and need not be in writing in order to be valid.

In *Patton v. Mills*, 21 Kan. 163, the distinction between an original and a collateral promise is drawn, and in quoting from page 26 of volume 3 of the sixth edition of Parsons on Contracts, it was said:

" 'It may, indeed, be stated as a general rule that, wherever .the main purpose and object of the promisor is not to answer for another, but to subserve some purpose of his own, his promise is not within the statute, although it may be in form a promise to pay the debt of another, and although the performance of it may incidentally have the effect of ex-. tinguishing the liability of another.' "    (p. 169.)

The rule applicable where there is an agreement to forbear the enforcement of a lien upon the promise of a third party to pay the debt where such third party has an interest to pro-. tect or a purpose of his own to subserve, is stated thus:

"In those cases in which the owner or intending purchaser of property which is subject to a mortgage or other lien to secure a debt owing by a third person promises, in consideration of the mortgagee's or other creditor's forbearance to enforce his lien, to pay such debt, his oral promise will be regarded as original and not within the statute, even though the incidental effect of its performance may be the extinguishment of such third person's debt, because in such cases the promisor has himself a direct personal interest in discharging the encumbrance, .and the payment thereof is simply the price he ' undertakes to pay to accomplish his end."    (20 Cyc. 194.)

(See, also, *Fears v. Story,* 131 Mass. 47; *Mitchell v. Beck,* 88 Mich. 342; *Stephen v. Yeomans,* 112 Mich. 624; *Fitzgerald v. Morrissey,* 14 Neb. 198; *Rogers v. Empkie Hardware Co.,* 24 Neb. 653; *Prime et al. v. Koehler,* 77 N. Y. 91; *White v. Rintoul,* 108 N. Y. 222; *Kelley v. Schupp and another,* 60 Wis. 76; 20 Cyc. 167, 168; 2 Words and Phrases, pp. 1253, 1254.)

The testimony is sufficient to show an oral agreement to assume and pay the entire debt, and supplemented as it is with the correspondence it must be regarded as sufficient to uphold the finding of the trial court.    For her own benefit she requested forbearance for a fixed time and forbearance from bringing suit was granted upon her agreement that she would pay the debt.    This constituted a new contract and the forbearance is a sufficient consideration for her promise to pay the debt upon which her creditor had a right to sue.    (9 Cyc. 338; 6 R. C. L. 659; Note, 19 L. R. A., n. s., 842.)

In her behalf it is insisted that *Brant v. Johnson,* 46 Kan. 389, 26 Pac. 735, is not in line with the view herein taken and is in effect a holding that the promise relied on is within the statute of frauds.    Some language is used in the opinion written by the commissioner to the effect that if the original liability remains the new promise is necessarily collateral and

within the statute. In that case, however, the promise relied upon was not an original undertaking based upon a new and independent consideration. It was collateral, without any consideration whatever, and the rule mentioned by the commissioner was not involved in the determination of the case. Here there was a new and superadded consideration for the promise moving between Mrs. Cunningham and the holder of the note and mortgage and her promise which was made to subserve her own purpose is to be regarded as an original undertaking and not being within the statute is not required to be in writing.

The judgment is affirmed.

DAWSON, J., dissenting.