No. 27,885.

WILLIAM F. HOAG, *Appellee,* v. E. E. BOYLE et al., *Appellants.*

(265 Pac. 61.)

SYLLABUS BY THE COURT.

1. FRAUDS, STATUTES OF — *Promise to Answer for Debt of Another — Original Promise Resulting in New Contract.* Parties who had been conducting an oil business secured a loan from H, for which they gave their note, and they also owed H a small sum on account. On the back of the note they had made an indorsement agreeing to pay a portion of the debt within a month, and thereafter would pay H twenty per cent of the net receipts of the business weekly until the note was paid. B, who was acquiring an interest in the business and proceeding to incorporate it, found the claim or lien of H upon the business to be an obstacle to incorporation, and orally agreed that if H would surrender and cancel his claim on the receipts of the business, B would indorse the note and pay the account. Based on this promise and consideration, H released and canceled his claim on the business, but thereafter B failed and refused to indorse or pay the note and account. In an action by H against B it is held that there was sufficient consideration for the promise of B, and further that it resulted in a new contract, the promise being original rather than collateral and not within the statute of frauds.

2. PLEADING—*Amendments.* Rulings relating to amendment of pleadings held to be without material error.

---

Frauds, Statute of, 27 C. J. pp. 134 n. 15, 151 n. 39; 22 L. R. A. n. s. 1077; 40 L. R. A. n. s. 242; 25 R. C. L. 494.

Hoag v. Boyle.

Appeal from Sedgwick district court, division No. 4; ISAAC N. WILLIAMS, judge. Opinion filed March 10, 1928. Affirmed.

*J. Graham Campbell* and *Ray Campbell,* both of Wichita, for the appellants.

*E. L. Foulke, James B. Nash* and *Roy H. Wasson,* all of Wichita, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action involves the question whether an oral promise to pay certain obligations was original and primary in character or was a mere collateral promise to pay the debt of another and therefore within the statute of frauds.

It was alleged and shown that H. W. Eastman and F. E. Clark were partners carrying on an oil business under the name of the Southwest Oil Company; that they had borrowed from William F. Hoag, $644.55, giving their note which bore interest at the rate of eight per cent per annum. On the back of the note was the following indorsement:

"It is agreed that we will pay on or before March 20, 1926, $175 on this instrument. It is further agreed that we will pay an amount equal to 20 per cent of the net receipts for all merchandise sold by us, said receipts to be remitted as collected weekly after March 20, 1926, until this instrument is satisfied.                    (Signed)   H. W. EASTMAN.
F. E. CLARK."

It was further shown that Boyle arranged to acquire an interest in the partnership business with Eastman and Clark, and they arranged to organize a corporation to take over the business. There were negotiations between Hoag and Boyle which resulted in an agreement by which Boyle, in consideration of the release by Hoag of the agreement on the back of the note and its cancellation, would indorse the note and would also pay an open account of $48.80 owed by Eastman and Clark to Hoag. Boyle prepared a release which was signed by Hoag to the effect that Hoag would disclaim any interest in the business and cancel the special terms of payment required by the indorsement on the back of the note, in consideration for which Boyle would indorse the note and pay the open account. The indorsement quoted was thereupon canceled by drawing lines through it and by the agreement, by Hoag waiving the claims on the business by reason of the installment-payment agreement. Hoag took the note and the release to the bank and left them in escrow, where Boyle was to go and indorse the note. Boyle, how-

ever, failed to indorse the note in accordance with his agreement and never paid the open account. An execution was issued upon the judgment against Eastman and Clark, but payment of the judgment was not made. This action was brought first in the city court, from which it was taken by appeal to the district court. Some amendments were made in the district court, and it was tried there upon the bill of particulars and an opening statement of counsel. A demurrer to the plaintiff's evidence was overruled, and the defendant Boyle introducing no evidence judgment was rendered against Boyle for $706.66 as damages for failing to indorse the note, and $52.33 for the failure to pay the open account.

On this appeal it is contended by Boyle that these debts were the obligations of Eastman and Clark, and that the oral promises made by him were collateral and therefore unenforceable. It is argued that Boyle, at the most, only promised to become the guarantor of the debt of Eastman and Clark, who were the principals and were still liable. It is further contended that there is no evidence of any consideration passing from Hoag to Boyle.

It cannot be said that there is any lack of consideration for the oral agreement. Boyle was acquiring an interest in the oil business and had arranged to incorporate it under the name of the Southwest Oil Company. He admitted that the security claim of Hoag on the business was an obstacle to the incorporation, which he desired to have canceled. It was agreed that if Hoag would surrender and release the claim of the initial payment of $175 on March 20 following, and the weekly payments thereafter out of the going business, Boyle would indorse the note and would pay the open account of $48.80. The written release prepared by Boyle, signed by Hoag and accepted by Boyle, recited that it was done in consideration of Boyle's promise to indorse and make himself liable upon the note and also make payment of the account. The surrender of Hoag's claim and the relinquishment of the security which it afforded was for the interest and benefit of Boyle and constituted valuable and sufficient consideration. (*Johnson v. Huffaker,* 99 Kan. 466, 162 Pac. 1150, and cases therein cited.)

The remaining question is whether the agreement being oral or partly oral was within the statute of frauds. Boyle contends that it was no more than a promise to become the guarantor of the debt of Eastman and Clark, the principals who remained liable on the

obligation, and being a mere oral promise to pay the debt of another should be regarded as collateral and within the statute of frauds. The continuing liability of the original obligors is not material or decisive if the oral contract is made to subserve some pecuniary or business purpose, which involves benefit to him or loss to the promisee. If the promise is primary and original in character, the question of whether there was an extinguishment of the original debt is not material. The surrounding circumstances of the transaction which have been related, indicate quite plainly that the promise was primary and original rather than a collateral undertaking of Boyle. In *Johnson v. Huffaker,* supra, it was held that a promise by a purchaser of land upon which there was a mortgage, to the effect that he would pay the note and mortgage which had been executed by another, the promise being made to subserve the interest of the promisor, the consideration being the forbearance of the creditor in the foreclosure of the mortgage, constitutes an original undertaking and is valid though not in writing. It was said that:

"This constituted a new contract and the forbearance is a sufficient consideration for her promise to pay the debt upon which her creditor had a right to sue." (p. 471.)

In the later case of *State Bank v. Murphy,* 115 Kan. 350, 223 Pac. 486, a father made oral promises to pay money advanced by a bank to his son, and there was a question as to whether the promise made to the bank was primary and valid or whether there was sufficient evidence to require the submission of the question to the jury whether it was an original or collateral promise, and it was held that there was sufficient evidence to sustain a finding that the contract was original rather than collateral. Among other things it was said:

"Murphy, senior, was a man of means; he was naturally solicitous that his son should branch out into business, and learn the financial responsibilities of a business man—how to borrow money, to give security, and learn to meet his obligations. The father wanted the bank to coöperate in this matter of the son's business education. The cashier agreed to this. But, of course, the bank could not prudently loan money in considerable sums to a youth just coming of age, without means, without business experience and without having demonstrated his business sagacity, and look primarily and exclusively to the son to make good on such extensive financial undertakings. So the evidential circumstances as a whole, together with the testimony in the bank's behalf, and notwithstanding the positive testimony of defendant to the contrary, justified the overruling of the demurrer." (p. 352. See, also, *Ezell v. Butcher,* 104 Kan. 465, 179 Pac. 332.)

The distinction between an original and collateral promise under the statute of frauds was well stated in *Nelson v. Boynton*, 3d Met. 400, where Chief Justice Shaw said:

"The terms original and collateral promise, though not used in the statute, are convenient enough to distinguish between the cases, where the direct and leading object of the promise is to become the surety or guarantor of another's debt, and those where, although the effect of the promise is to pay the debt of another, yet the leading object of the undertaker is to subserve or promote some interest or purpose of his own. The former, whether made before or after, or at the same time with the promise of the principal, is not valid, unless manifested by evidence in writing; the latter, if made on good consideration, is unaffected by the statute because, although the effect of it is to release or suspend the debt of another, yet that is not the leading object on the part of the promisor. . . . The rule to be derived from the decisions seems to be this: that cases are not considered as coming within the statute when the party promising has for his object a benefit which he did not before enjoy accruing immediately to himself; but where the object of the promise is to obtain the release of the person or property of the debtor, or other forbearance or benefit to him, it is within the statute."

The supreme court of the United States in *Emerson v. Slater*, 22 How. 28, 43, laid down the rule that:

"Whenever the main purpose and object of the promisor is not to answer for another, but to subserve some pecuniary or business purpose of his own, involving either a benefit to himself, or damage to the other contracting party, his promise is not within the statute, although it may be in form a promise to pay the debt of another, and although the performance of it may incidentally have the effect of extinguishing that liability." (See, also, *Crawford v. Edison*, 45 Ohio St. 239.)

A case somewhat similar to this one is *First Nat. Bank v. Clifton*, 73 Cal. App. 157, where a defendant promised to indorse a note in consideration of the renewal of a loan to a company in which he was interested. The renewal was granted, but defendant failed and refused to indorse the note. It was held that the promise was valid and that defendant was liable to the amount of the note.

Our conclusion is that the agreement which Boyle made with plaintiff constituted a new contract, that his promise was original rather than collateral, and therefore not within the statute of frauds.

Complaint is made that plaintiff was allowed to mend his hold when he was given permission to amend his bill of particulars. Upon the trial in the district court application was made by plaintiff to amend his pleading to correspond with an opening statement made in the city court which had been reduced to writing and was among the papers of the appeal. The court said that it did not

make much difference whether an amendment was made or tried on the opening statement in the record of the appeal. While plaintiff asked and was granted leave to amend his pleading to conform to the opening statement and the proof produced, it does not appear from the record that the amendment was actually filed. The case came from the city court, and was to be tried *de novo* upon the original papers of the lower court. unless the appellate court in furtherance of justice allowed amended pleadings. The pleadings in the lower court, as in trials before justices of the peace, are not of as great importance as in cases brought in the district court. It is clear, however, that the case was tried and determined on the issues of the proposed amendment. There could have been no misunderstanding of these issues and no prejudice could have resulted from the informality.

The judgment is affirmed.